IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRUSTEES AND FIDUCIARIES OF THE IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) BENEFIT AND PENSION PLANS, et al.,** | : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 22-1432 |
| **INNER CITY STEEL, LLC, and ROBERT BARTON** | : : : | |
| Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                  December 21, 2022

      The Trustees and Fiduciaries of the Iron Workers District Council (Philadelphia and Vicinity) Benefit and Pension Plan and the Iron Workers District Council's Benefit and Pension Plans (collectively, "District Council Funds"), International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Local Union No. 404 ("Local 404"), its Annuity and Apprentice Training Fund and its IPAL (collectively, "404 Benefit Funds"), and the Union Iron Workers Employers Association of Central Pennsylvania Industry Advancement Fund ("Industry Fund") (collectively, "Plaintiffs") sued Defendants Inner City Steel, LLC and Robert Barton under the Employee Retirement Income Security Act ("ERISA") for their alleged failure to make contributions required by a series of collective bargaining agreements ("CBAs"). Plaintiffs properly served Defendants, but Defendants failed to file an answer or otherwise respond to the Complaint. Plaintiffs requested and obtained an entry of default against them. Plaintiffs now move for a default judgment. For the reasons that follow, their motion will be granted.

1

I. **BACKGROUND**

Inner City Steel, LLC (the "Company") is an industrial employer owned and controlled by Robert Barton. (Compl., ECF 1, ¶¶ 11-13.) As a Company officer, Barton controlled—and may still control—the Company's assets. (*Id.* ¶¶ 13, 36.) Between 2015 and 2018, Defendants entered into a series of CBAs with Local 404.[1] (*Id.* ¶ 15; Ex. A, ECF 1-3; Ex. B, ECF 1-4.) The CBAs provided that the Company would (i) make full and timely payments to the District Council, 404 Benefit, and Industry Funds (collectively, the "Funds") on behalf of CBA-covered employees; (ii) make certain contributions to the Funds based on the number of hours accrued by employees; (iii) produce books and records necessary to conduct an audit of Company records concerning its obligations to the Funds; and (iv) pay interest, liquidated damages, and all litigation costs—including attorneys' fees—the Funds incurred because of any Company failure to comply with the CBAs. (*Id.* ¶ 15; *see also* Ex. A at 6-9, 12; Ex. B at 18-29.)

In June 2019, Plaintiffs exercised their right under the CBA and audited the Company for the period of January 1, 2017 through December 31, 2018. (Compl. ¶ 16; Pls.' Mot. for Default J. [Pls.' Mot.], ECF 6, at ¶ 5; *see also* Ex. C, ECF 1-5.)[2] The audit revealed that the Company had not made $54,083.87 in required contributions across the Funds. (Ex. D.)

The parties entered into a settlement agreement in February 2020. (Compl. ¶ 18; Pls.' Mot. ¶ 7; *see also* Ex. E, ECF 1-7.) Under the agreement, Defendants agreed to pay eleven monthly payments of $4,600 and a final payment to resolve the outstanding balance. (Compl. ¶ 19; Ex. E

---

[1] Defendants entered into a CBA with the International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 489 in 2015. (*See* Ex. A.) In 2017, this local labor organization merged into Local 404. (Compl. ¶ 14.) The Court will refer to both as Local 404.

[2] The third-party auditor revised the audit report based on additional Company information and provided an updated summary page. (Compl. ¶ 17; Pls.' Mot. ¶ 6; *see also* Ex. D, ECF 1-6.)

at ¶ 1.) Defendants made a series of payments totaling $18,700, reducing the principal balance to $15,120.64. (Compl. ¶ 21; Pls.' Mot. ¶ 8). But they failed to pay the remaining amount owed. (Compl. ¶ 22; Pls.' Mot. ¶ 8.)

Plaintiffs then authorized a second audit for the period of January 1, 2019 through December 31, 2020, which revealed Defendants also failed to make significant contributions to the Funds for this period. (Compl. ¶¶ 24-25; Pls.' Mot. ¶¶ 9-10.) The Company did not contribute $163,248.25 to the District Council Funds and $75,567.71 to the 404 Benefit Funds. (Compl. ¶ 25; Pls.' Mot. ¶ 10; *see also* Ex. F, ECF. 1-8.)

Defendants then partially paid these delinquencies. (Pls.' Mot. ¶¶ 13-16.) Since Plaintiffs filed their Complaint, Defendants satisfied the principal due for January 1, 2017 through December 31, 2018. (Pls.' Mot. ¶ 14.) But Defendants have not yet paid amounts due for interest and liquidated damages. (*Id.* ¶ 14.) For the first period of unpaid contributions, Defendants still owe the District Council $6,867.58 in interest and $2,327.39 in liquidated damages and the 404 Benefit Funds $3,058.47 in interest and $1,054.68 in liquidated damages. (*Id.*) Moreover, Defendants have not yet satisfied the principal due for January 1, 2019 through December 31, 2020. (*Id.* ¶¶ 16-17.) For the second period of unpaid contributions, Defendants owe the District Council Funds $140,375.25 in principal, $70,089.58 in interest, and $16,324.83 in liquidated damages. Defendants owe the 404 Benefit Funds and the Industry Fund $64,962.01 in principal, $42,018.50 in interest, and $7,558.77 in liquidated damages.[3]

Plaintiffs filed their Complaint on April 12, 2022 (ECF 1) and served it on Defendants by personal service on Barton on April 16. (ECF 3 and 4.) Defendants failed to timely file an answer

---

[3] The interest owed to both the District Council Funds, 404 Benefit Funds, and Industry Fund is current through August 2022. (Pls.' Mot. ¶ 17.)

3

or otherwise respond to the Complaint, so Plaintiffs requested a default on May 11 and the Clerk of Court entered it on the same day. (ECF 5.) On October 5, Plaintiffs moved for default judgment, seeking, among other relief: principal contributions, interest accrued on the principal, liquidated damages, and attorneys' fees. (Pls.' Mot. 20-21.) Plaintiffs request a judgment of $243,653.90 against Defendants with a 1.5% interest rate on most of that total until it is repaid. (Pls.' Mot. 5-6.)

## II.  STANDARD OF REVIEW

After a default is entered, Federal Rule of Civil Procedure 55(b)(2) allows a district court to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. *Anchorage Assocs. v. V.I. Bd. of Tax Revenue*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). An entry of default, however, does not automatically entitle the non-defaulting party to a default judgment. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Rather, the decision to enter a default judgment is "left primarily to the discretion of the district court." *Id.* at 1181.

## III.  DISCUSSION

### A. Default Judgment

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). "[W]hen a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default

4

judgment pursuant to Rule 55(c)." *Mount Nittany Med. Ctr. v. Nittany Urgent Care, P.C.*, No. 11-622, 2011 WL 5869812, at *1 (M.D. Pa. Nov. 22, 2011) (citing *Anchorage Assocs.*, 922 F.2d at 177 n.9).

Here, all three *Chamberlain* factors weigh in favor of granting a default judgment. First, a plaintiff will be prejudiced absent a default judgment when a defendant fails to respond to the plaintiff's claims because the "plaintiff will be left with no other means to vindicate his or her claims." *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016). Defendants did not timely respond to Plaintiffs' Complaint and without a default judgment, they will not receive the contributions still owed under the CBA. *See Laborers Dist. Council Constr. Indus. Pension Fund v. Miniscalo Corp.*, No. 20-5745, 2022 WL 802165, at *4 (E.D. Pa. Mar. 16, 2022). Defendants' refusal to engage portends an indefinite delay absent Court action. *See Vo*, 2016 WL 475313, at *3; *Laborers Dist. Council*, 2022 WL 802165, at *4.

Second, no cognizable defenses are apparent from the record. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 53 (3d Cir. 2003) (Rendell, J., concurring) ("[I]t makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses when the defendant has failed to respond."); *Vo*, 2016 WL 475313, at *3 ("[T]he Court cannot consider Defendant's defenses if any exist because Defendant failed to respond to this action."); *see also Laborers Dist. Council*, 2022 WL 802165, at *4 ("It is not the court's responsibility to research the law and construct the parties' arguments for them.") (citation and alterations omitted).

Third, Defendants' unexplained failure to respond to the Complaint permits the Court to draw an inference of culpability on the its part. *Laborers Dist. Council*, 2022 WL 802165, at *4; *see also Local Union No. 98 Int'l Bhd. of Elec. Workers v. Chester Cnty. Elec., Inc.*, No. 12-3440, 2013 WL 5567446, at *2 (E.D. Pa. Oct. 9, 2013) ("[W]hile Defendant[s have] failed to engage in

5

this litigation, the docket indicates that [they were] properly served. Therefore, the fault rests with Defendant[s] for [their] failure to participate in this litigation.").

The Court will enter default judgment accordingly.

**B.  Relief Requested**

ERISA section 515 requires employers "make contributions to a multiemployer plan under the terms of . . . a collectively bargained agreement . . . ." 29 U.S.C. § 1145. If an employer fails to make required contributions, a plan fiduciary may seek judgment against the employer. *Id.* § 1132(g)(2); *see also Int'l Bhd. of Elec. Workers Union No. 98 Health & Welfare Fund v. D'Narpo Elec., LLC*, No. 21-1923, 2022 WL 742735, at *3 (E.D. Pa. Mar. 10, 2022). Relief available under ERISA for delinquent contributions includes:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> > (i) interest on the unpaid contributions, or (ii) liquidated damages provided for
> under the plan in an amount not in excess of 20 percent (or such higher percentage as may
> > be permitted under Federal or State law) of the amount determined by the court
> > under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Court may "rely on affidavits and other documented evidence to award the appropriate default judgment amount." *Laborers Dist. Council*, 2022 WL 802165, at *5; *Int'l Bhd. of Elec. Workers Union No. 98*, 2022 WL 742735, at *5; *Pesotski v. Summa & Iezzi, Inc.*, No.17-221, 2017 WL 3310951, at *4 (M.D. Pa. Aug, 3, 2017).

Plaintiffs allege Barton is also liable for any of the Company's delinquencies because he was a fiduciary under ERISA. (Compl. ¶¶ 32-41; Pls.' Mot. ¶¶ 25-30.) Under ERISA section 404, a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and

6

their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Additionally, "any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable" for any losses to the plan. 29 U.S.C. § 1109(a).

"A person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Courts use a "two-part test to determine whether fiduciary liability attaches to individuals: (1) unpaid contributions must be plan assets, and (2) the individual must either exercise discretion in the management of the plan or exercise any authority or control over the plan." *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Pres. Funds v. Century Elevator, Inc.*, No. 11-3792, 2011 WL 4807917, at *3 (E.D. Pa. Oct. 11, 2011) (internal quotations omitted). Here, both prongs are met.

Plaintiffs allege Barton "exercised discretionary authority and/or discretionary control respecting the management and/or disposition of assets of the District Council Funds and 404 Benefit Funds." (Compl. ¶¶ 35; Pls.' Mot. ¶¶ 24-25.) As the "controlling owner" of the Company, Barton prepared, reviewed, and authorized payment, and submitted monthly reports and contributions to Plaintiffs on behalf of the Company. (Compl. ¶ 33; *see also* Pls.' Mot. ¶ 22.) The unpaid contributions are plan assets, as outlined in the CBAs. *See* Ex. A at 7-9, 12; Ex. B. at 28; *see also Trs. of the Nat'l Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Pres. Funds v. Gateway Elevator, Inc.*, No. 09-4206, 2011 WL 2462027, at *5 (E.D. Pa. June 21, 2011) (holding unpaid contributions pursuant to a collective bargaining agreement were plan assets for the purposes of 29 U.S.C. § 1002(21)(A)); *Century Elevator, Inc.*, 2011 WL 4807917, at *3-4

(holding unpaid contributions were plan assets under terms of collective bargaining agreement). Plaintiffs have sufficiently pleaded that Barton exercised "discretionary authority or control" of plan assets and as a result he is subject to ERISA fiduciary liability. *See Int'l Bhd. of Elec. Workers Union No. 98*, 2022 WL 742735, at *4.

Plaintiffs seek an award of (1) $140,375.25 to the District Council Funds and $64,962.01 to the 404 Benefit Funds and Industry Fund for unpaid principal contributions from January 2019 through December 2020; (2) $70,089.58 to the District Council Funds and $42,018.50 to the 404 Benefit Funds and Industry Fund in unpaid interest at 1.5% from January 2019 through December 2020; (3) $6,867.58 to the District Council Funds and $3,058.47 to the 404 Benefit Funds and Industry Fund in unpaid interest at 1.5% from January 2017 through December 2018; (4) ongoing interest at 1.5% per month on the unpaid principal from January 2019 through December 2020;[4] (5) $76,957.16 to the District Council Funds and $45,076.97 to the 404 Benefit Funds and Industry Fund in liquidated damages. (Pls.' Mot. at 5-6.) In support of their requested relief, Plaintiffs submit two signed CBAs, two audit reports—including an updated summary for one of these reports, and a signed settlement agreement. (*See* Exs. A-F; ECF 6-3.) Plaintiffs have met their burden to show they are entitled to a default judgment in the amounts requested. *See Int'l Bhd. of Elec. Workers Union No. 98*, 2022 WL 742735, at *6 (finding a nearly identical set of documents submitted by plaintiffs' adequate to award default judgment).

Plaintiffs also seek attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D). It is their burden to prove—through evidence supporting the hours worked and rates claimed—that the fees they seek are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). They submit

---

[4] Plaintiffs are entitled to "ongoing interest on the amounts awarded" at "a rate of 1.5% per month pursuant to Article VIII Section 9.A of the collective bargaining agreement and 29 U.S.C. § 1132(g)(2)(B) until [the judgment] is satisfied." (Pls.' Mot. at 5, 8.)

their attorney Ryan R. Sweeney's affidavit detailing legal work he performed for this litigation, the number of hours worked, his hourly rate, and additional costs and fees. (ECF 6-3.) Although Plaintiffs' motion fails to detail Sweeney's experience, information which would ordinarily be required to meet their burden, his hourly rate on this case was $190, substantially less than the rate he billed in another similar case that was previously deemed reasonable. *See Int'l Bhd. of Elec. Workers Union No. 98*, 2022 WL 742735, at *6 (finding Mr. Sweeney's hourly rate of $395 for a different client to be reasonable). It is also less than other attorneys in this market have recently billed for similar work. *See Sheet Metal Workers' Health & Welfare Fund of Loc. No. 19 v. Invision Sign LLC*, No. 20-2291, 2020 WL 4924539, at *2 (E.D. Pa. Aug. 21, 2020) (approving hourly rates ranging from $250 to $510 for an ERISA default judgment); *Carpenters Health & Welfare Fund of Philadelphia & Vicinity v. Reyes*, No. 17-05107, 2018 WL 3437212, at *4 (E.D. Pa. July 16, 2018) (granting plaintiffs attorneys' fees and finding an hourly rate of $340 reasonable). Sweeney worked a total of 28.5 hours preparing the Complaint and motion for a default judgment, corresponding with his client and Defendants about filings and potential settlement, and reviewing the updated audit reports. (ECF 6-3 at 4.) The amount of time he expended on this litigation is reasonable, as is Sweeney's hourly rate. Plaintiffs are entitled to recover $6,458.21 in requested attorneys' fees. *See Int'l Bhd. of Elec. Workers Union No. 98*, 2022 WL 742735, at *6 (approving attorneys' fees in motion for default judgment in ERISA case for delinquent contributions).

**IV.   CONCLUSION**

For the reasons stated above, the Court grants Plaintiffs' motion for default judgment. Judgment will be entered in Plaintiffs' favor and against Defendants.

An Order consistent with this Memorandum will be docketed separately.